UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN MARINELLI,            :   \

        Petitioner       :   CIVIL ACTION NO. 4:CV-07-0173

    v.                  :   (Judge Mariani)

JEFFREY BEARD, Commissioner,   :
Pennsylvania Department of Corrections;:
LOUIS B. FOLINO, Superintendent of  :
the State Correctional Institution at   :   **THIS IS A CAPITAL CASE**
Greene; and FRANKLIN J. TENNIS,  :
Superintendent of the State Correctional :
Institution at Rockview,          :
                               :
        Respondents    :

## MEMORANDUM

## I.   INTRODUCTION

Presently pending before the Court, in the above-captioned habeas

proceeding, is Marinelli's motion to alter or amend the November 26, 2012

judgment, entered by this Court. (See Doc. 48). Petitioner requests that this Court

reconsider its decision with respect to nine of the claims asserted in the petition,

or, alternatively, to reconsider only the denial of a certificate of appealability in

order to permit the Petitioner to seek appellate review in the United States Court

of Appeals for the Third Circuit. The motion to alter or amend the judgment is fully briefed and is ripe for judicial consideration. However, because Marinelli has recently returned to state court to pursue the merits of one of the nine issues, the instant action will be stayed pending the outcome of Petitioner's pending state court action.

## II.    **FACTUAL AND PROCEDURAL HISTORY**

On May 18, 1995, Marinelli was found guilty of first degree murder, robbery, conspiracy to commit robbery, burglary, theft by unlawful taking, receiving stolen property and aggravated assault, following a jury trial in the Court of Common Pleas of Northumberland County, Pennsylvania. The Pennsylvania Supreme Court summarized the relevant facts as follows:

> The testimony at appellant's trial established the following facts. On the evening of April 26, 1994, appellant and his brother, Mark Marinelli (Mark), and Kirchoff met at appellant's apartment to plan a burglary of the residence of Conrad Dumchock (Dumchock), whom Mark knew to have stereo equipment. The three men obtained weapons, disguises, and gloves in preparation for the burglary, and proceeded to Dumchock's home in Kulpmont.
>
> Dumchock was home alone and had just spoken to his sister and brother-in-law on the telephone for forty-five minutes. The Marinelli brothers and Kirchoff arrived at Dumchock's home and initially had difficulty gaining entry. Observing that Dumchock's car was parked outside his house and concerned about the possibility of being

2

discovered, the threesome left Dumchock's residence but returned a few minutes later to again attempt to enter. Eventually, they broke a small window in the kitchen door and entered the residence.

Upon entering Dumchock's residence, appellant immediately proceeded to the second floor, where he encountered Dumchock. When Dumchock requested that appellant leave his home, appellant struck Dumchock's face with his gun and yelled for assistance from Mark and Kirchoff.

The appellant and Kirchoff continued to beat Dumchock, despite Dumchock's pleading with them to take what they wanted and leave him alone. The three rummaged through Dumchock's home looking for items to take and asking Dumchock where his guns and money were located. When Dumchock would moan or not answer, appellant would hit Dumchock again.

Mark and Kirchoff departed Dumchock's home after they had loaded the items they wished to steal, while appellant remained in the residence with Dumchock. Appellant then shot Dumchock twice in the head, with one shot into Dumchock's eye and the other directly between Dumchock's eyes. Appellant then ran out of Dumchock's house and exclaimed, "Let's get out of here!"

The threesome returned to Kirchoff's home and divided the items stolen from Dumchock. A short while later, the Marinelli brothers returned to Dumchock's house and took a motorcycle from the victim's porch.

Appellant attempted to start the motorcycle on compression, with Mark following in a car. They were observed crossing the main road in Kulpmont heading toward the other side of town. When the motorcycle would not start, appellant abandoned it.

On the morning following the killing, Clyde Metzger, who was

waiting for Dumchock to drive him to work, entered the victim's home and discovered Dumchock's stereo equipment had been disarranged and Dumchock's dog was shaking. Metzger called out to Dumchock but received no response. Metzger became concerned and left Dumchock's home, and headed to the police station. On his way there, Metzger encountered a Kulpmont Police Sergeant Detective Robert Muldowney, and related to him the circumstances he had found.

Sergeant Muldowney entered Dumchock's home, noting that the storm door was open, the inside door was propped open with a chair, and the glass had been broken from a window in the door. Inside the house, Sergeant Muldowney discovered that telephone cords had been cut. Upstairs, Sergeant Muldowney discovered the victim's cold body lying at the top of the stairway landing. Sergeant Muldowney noted that Dumchock's bedroom was disheveled, with drawers removed from the dresser and various items strewn on the victim's bed. Pennsylvania State Police and County Coroner Richard Ulrich were called to the scene. The victim's sister also arrived at his house and noted that Dumchock's motorcycle was missing. The motorcycle was later recovered hidden in some brush where it had been abandoned. Dumchock's brother-in-law informed police that guns, tools, and electronic equipment were also missing from Dumchock's residence. One of Dumchock's friends, David Dormer, was brought to Dumchock's residence to assist police in determining which stereo equipment, as well as liquor, was missing.

On May 25, 1994, Mark Marinelli's girlfriend, Deeann Chamberlain, turned over to Coal Township Police certain weapons which Mark had brought to her home. These weapons were later identified as having belonged to the victim. County Coroner Ulrich was at the Coal Township police station when Ms. Chamberlain turned over these weapons. The coroner connected the items with the Dumchock killing, and notified the District Attorney and State Police. Further, Ms. Chamberlain allowed Shamokin Police to come to her home and

4

remove other items Mark had left there, including a telephone answering machine. Coroner Ulrich recognized the telephone answering machine as being of the type reported missing from Dumchock's house, and he notified the State Police.

Additionally, a friend of appellant, Nathan Reigle, was questioned by police about the Dumchock murder. Reigle stated to police that appellant had bragged about how he had killed Dumchock. A search of appellant's residence by police recovered a number of items, including stereo equipment, later identified as property belonging to the victim. After being questioned by police, appellant gave police both an oral and a taped confession as to his involvement in the Dumchock killing.

See Commonwealth v. Marinelli, 547 Pa. 294, 306-308 690A.2d 203, 209-210 (1997) ("Marinelli-1"). The penalty phase commenced the following day, May 19, 1995. During the penalty phase, the jury found two aggravating circumstances: (1) Marinelli committed the killing while in the perpetration of a felony, see 42 Pa. Cons. Stat. Ann. § 9711(d)(6); and (2) Marinelli committed the offense by means of torture, see 42 Pa. Cons. Stat. Ann. § 9711(d)(8). The jury also found two mitigating circumstances: (1) Marinelli had no significant history of prior convictions, see 42 Pa. Cons. Stat. Ann. § 9711(e)(1); and (2) other evidence in mitigation concerning the character and record of Marinelli, see 42 Pa. Cons. Stat. Ann. § 9711(e)(8). The jury concluded that the aggravating circumstances outweighed the mitigating circumstances and returned a verdict of death, see 42

Pa. Cons. Stat. Ann. § 9711(c)(1)(iv).

On August 11, 1995, the trial court formally imposed a sentence of death for first degree murder. Additionally, Marinelli was sentenced to consecutive terms of imprisonment of ten (10) to twenty (20) years on the robbery conviction; five (5) to ten (10) years on the conspiracy to commit robbery conviction; and ten (10) to twenty (20) years on the burglary conviction. No post sentence motions were filed.

Represented by Attorney James. J. Rosini, Petitioner filed a timely direct appeal to the Pennsylvania Supreme Court[1], raising four (4) claims for relief. Specifically, Petitioner presented the following issues for review:

I.     Is the verdict contrary to the evidence?

II.    Is the verdict contrary to the weight of the evidence?

III.   Is the verdict as to the sentence of death invalid due to the Commonwealth's failure to prove torture?

IV.    Did the trial court commit error when it:

---

[1] The appeal of a death sentence is directly to the Pennsylvania Supreme Court rather than to the Superior Court. See 42 Pa. C.S.A. § 9711(h).

1. Improperly granted Commonwealth's motion to consolidate?

2. Improperly denied defendant's motion to sever?

3. Improperly denied defendant's motion for changes of venue and/or venire said motion made both before and after co-defendant Mark Marinelli's plea of guilty?

4. Improperly denied defendant's motion to suppress statements made by defendant to police in violation of constitutional right to a speedy arraignment?

5. Improperly denied defendant's motion to suppress statements made by defendant to police in violation of right to counsel?

6. Failed to sustain defense counsel's objection to a death qualified jury?

7. Improperly permitted color and black and white photographs of the victim to be admitted when the prejudicial impact outweighed any probative or evidentiary value?

8. Improperly permitted a videotape depicting the body of the victim to be admitted when the prejudicial impact outweighed any probative or evidentiary value?

9. Improperly permitted a floor plan depicting the body of the victim to be admitted when the prejudicial impact outweighed any probative or evidentiary value?

10. Improperly permitted greatly enlarged photographic slides depicting the body of the victim to be admitted

when the prejudicial impact outweighed any probative or evidentiary value?

11. Improperly denied defendant's motion for mistrial after counsel for co-defendant referred to defendant by name in his opening statement?

12. Improperly denied defendant's motion for severance after counsel for co-defendant referred to defendant by name in his opening statement?

13. Failed to provide defendant with Commonwealth witness Nathan Reigle's juvenile record?

14. Improperly denied defendant's motion to prevent Commonwealth witness Mark Marinelli from presenting testimony known by the Commonwealth to be untrue/untrustworthy?
15. Improperly admitted a drawing of crime scene down 5/24/94 by Commonwealth witness Mark Marinelli?

16. Improperly denied defendant's in chambers motion for mistrial after Commonwealth witness and co-defendant, Mark Marinelli, demanded, in the presence of the jury, to be permitted to stop testifying and that his testimony was not truthful?

17. Improperly denied defendant's motion for mistrial after Commonwealth witness, Mark Marinelli, while sequestered, was permitted to confer with counsel in the sheriff's holding cell, in the middle of his testimony, for over two (2) hours, outside the court's presence?

18. Improperly permitted Commonwealth witness Pennsylvania State Police Trooper Richard Bramhall to

testify using improperly redacted statements made by co-defendant?

19. Failed to properly charge the jury on aggravating circumstance of torture?

20. Failed to charge the jury on voluntary intoxication?

21. Improperly charged the jury on degrees of murder by giving one instruction for first degree murder for defendant and a different instruction for first degree murder for co-defendant?

22. Improperly charged the jury on degrees of murder by giving an instruction for second degree murder for co-defendant to be used if defendant was found guilty of first degree murder?

23. Improperly permitted photographs and greatly enlarged slides, including autopsy, to be admitted during the penalty phase when the prejudicial impact outweighed any probative or evidentiary value?

24. Improperly denied defendant's motion to severance before summation?

25. Improperly denied defendant's motion for mistrial before summation?

(Doc. 27-2, App. I, Brief of Appellant at pp. 6-8).

The Pennsylvania Supreme Court affirmed the judgment of sentence upon direct appeal in an opinion dated February 25, 1997. See Marinelli-1, supra.

On July 25, 1997, Robert Dunham, Esquire from the Center for Legal Education Advocacy & Defense Assistance ("CLEADA"), filed a petition for writ of certiorari on behalf of Marinelli in the United States Supreme Court. (Doc. 27-5, App. L, Petition for Writ of Certiorari). Petitioner submitted the following grounds for relief:

> I      Does the admission of a non-testifying codefendant's confession that contains references to another participant in a joint trial violate the Confrontation Clause and this Court's holdings in Bruton v. United States, 391 U.S. 123 (1968) and Richardson v. Marsh, 481 U.S. 200 (1987) when those references are redacted and replaced with the term "the other guy," but the use of the term "the other guy" unmistakably refers to the defendant?

> II.     Should this Court grant certiorari to address the conflicting resolutions by the United States Courts of Appeal and the state courts concerning the question reserved by this Court in Richardson v. Marsh, 481 U.S. 200 (1987), whether the Confrontation Clause is violated by the admission at trial of a non-testifying co-defendant's "confession in which the defendant's name has been replaced with a symbol or neutral pronoun?"

> III.    In the alternative, should this Court hold this petition for writ of certiorari pending its resolution of similar issues for which it granted certiorari in Gray v. Maryland, – U.S. --, 1997 WL 195045 (U.S. June 6, 1997)?

(Doc. 27-5, App. L, Petition for Writ of Certiorari at p. ii).

On March 23, 1998, the United States Supreme Court denied Marinelli's petition for writ of certiorari. Marinelli v. Pennsylvania, 523 U.S. 1024 (1998).

Following disposition of the direct appeal, on April 28, 1998, Petitioner filed a, timely, *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541 et seq. The following day, the trial court again appointed Attorney Dunham to represent Marinelli in his petition for collateral relief. On October 13, 1998, Attorney Dunham filed an Amended PCRA petition on behalf of Marinelli. (Doc. 30-4, App. O, Amended PCRA Petition, Commonwealth v. Marinelli, No. 94-451 (Northumberland. County, Oct. 13, 1998)). In that petition, Marinelli raised claims relating to the following areas: (1) pretrial issues; (2) juror issues; (3) trial issues; (4) penalty phase issues; and (5) sentencing issues. Id. Following an evidentiary hearing on the Amended PCRA petition, from January 24, 2000 through January 27, 2000, newly appointed counsel, Jerome Nickerson, from the Defender Association of Philadelphia, filed a Second Amended PCRA petition. (Doc. 27-16, App. P, Second Amended Petition). The Second Amended Petition added the following claim:

Petitioner is entitled to a new trial because the Commonwealth

11

withheld evidence that was exculpatory at guilt and sentencing in violation of Brady v. Maryland and elicited testimony which it knew or should have known to be false in violation of Giglio v. United States.

Id. By Opinion and Order dated May 15, 2001, the PCRA court denied the PCRA petition. (Doc. 42, Ex. A, Opinion, Commonwealth v. Marinelli, No. 94-451 (Northumberland. County, May 15, 2001).

Marinelli, represented by Billy H. Nolas, Esquire, from the Defender Association of Philadelphia, filed a timely appeal to the Pennsylvania Supreme Court, raising the following issues:

I.     Should Appellant's death sentence be vacated because he was denied an impartial capital sentencing jury and, as a result, consideration of mitigating evidence was restricted, in violation of the Sixth, Eighth, and Fourteenth Amendments and Article I, Sections 9 and 13?

II.    Is Appellant entitled to a new sentencing proceeding because the court's penalty phase instructions improperly shifted the burden of persuasion from the Commonwealth to the defendant and violated the presumption of life afforded defendants in capital sentencing proceedings, in violation of the Sixth, Eighth and Fourteenth Amendments?

III.   Is Appellant entitled to a new trial because juror Clara Iwanski was a former client of an Assistant District Attorney involved in this case?

12

IV.   Did the admission in this joint trial of the non-testifying co-defendant's confession, where the term "the other guy" unmistakably referred to Appellant, violate the Sixth, Eighth and Fourteenth Amendments?

V.    Should Appellant's death sentence be vacated because the sentencing jury was never instructed that, if sentenced to life, he would be statutorily ineligible for parole?

VI.   Was counsel ineffective in misapprising Appellant of his right to testify to personal background mitigating circumstances without being subject to cross-examination on the circumstances of the offense, and was Appellant's waiver of his right to testify in mitigation was invalid, in violation of the Sixth, Eighth and Fourteenth Amendments?

VII.  Is relief appropriate because the court failed to properly instruct on the nature and use of aggravating and mitigating factors, in violation of the Sixth, Eighth and Fourteen Amendments?

VIII. Is Appellant entitled to the production of the remaining voir dire transcripts and restoration of his right to direct appeal, nunc pro tunc, because these notes of testimony of the voir dire proceedings were unavailable to him, in violation of due process under the Fourteenth Amendment?

IX.   Should Appellant's death sentence be vacated because the Pennsylvania Supreme Court failed to provide him meaningful proportionality review in violation of 42 Pa.C.S. 9711 (h)(3)(iii) and Pennsylvania and Federal Constitutional Law?

X.   Was the "torture" instruction, especially in conjunction with the prosecutor's argument, unconstitutionally vague, overbroad, arbitrary and capricious, in violation of the Sixth, Eighth and Fourteenth Amendments?

XI.   Should Appellant's conviction and death sentence be vacated because they were obtained by inflammatory, unscientific, unreliable and misleading "expert" testimony?

XII.   Is Appellant entitled to a new trial and should his death sentence be vacated because of errors under Brady v. Maryland and its progeny?

XIII.   Was counsel ineffective at capital sentencing?

(Doc. 30-11, App. Q, Initial Brief of Appellant).

On November 25, 2002, the Pennsylvania Supreme Court issued its opinion in connection with Marinelli's appeal from the denial of his PCRA petition. Commonwealth v. Marinelli, 570 Pa. 622, 810 A.2d 1257 (Pa. 2002) ("Marinelli-2")(Doc. 27-9, App. R). The Court, through former Madame Justice Newman, affirmed in part, and reversed in part, the order denying post-conviction relief, and remanded the case for further proceedings. See Marinelli-2, supra. Specifically, the Supreme Court concluded that the lower court had erred in its determination that claims I, II, III, V, VI, VII, VIII and IX were waived. Id. The case was remanded for the PCRA court to consider those eight (8) issues. Id. With respect

14

to the remaining issues, the Supreme Court determined that claim IV ("Did the admission in this joint trial of the non-testifying co-defendant's confession, where the term "the other guy" unmistakably referred to Appellant, violate the Sixth, Eighth and Fourteenth Amendments?") and claim X ("Was the 'torture' instruction, especially in conjunction with the prosecutor's argument, unconstitutionally vague, overbroad, arbitrary and capricious, in violation of the Sixth, Eighth and Fourteenth Amendments?") were previously litigated on direct appeal and therefore not appropriate for consideration on collateral review. Id. The Court rejected Marinelli's remaining three (3) claims (XI, XII and XIII) as meritless. Id.

On remand, the PCRA court concluded that all eight of Marinelli's claims (I, II, III, V, VI, VII, VIII and IX) were meritless and entered an order on March 30, 2004 denying post-conviction relief. (Doc. 42, Ex. B, Memorandum Opinion and Order). Marinelli filed an appeal to the Pennsylvania Supreme Court, challenging the lower court's determination that his eight (8) claims were meritless. (Doc. 30-13, App. T, Initial Brief of Appellant (After Remand).

In a November 7, 2006 Opinion, the Pennsylvania Supreme Court, through former Madame Justice Newman, affirmed the order of the PCRA court order.

<u>Commonwealth v. Marinelli</u>, 589 Pa. 682, 910 A.2d 672 (2006), <u>reargument</u> <u>denied</u> (Jan 24, 2007) ("<u>Marinelli-3</u>") (Doc. 27-11, App. W, Opinion).

By Order dated January 24, 2007, Marinelli's application for reargument was denied.

On January 30, 2007, Marinelli filed the instant action (Doc. 1). On August 10, 2007, Marinelli filed his petition for writ of habeas corpus, in which he alleges eighteen (18) claims for relief. (Doc. 9, Petition). Specifically, those claims are set forth as follows:

> I. Petitioner's convictions and death sentence should be vacated because his due process and confrontation rights were violated under <u>Bruton v. United States</u> and its progeny;
>
> II. Petitioner's convictions and death sentences should be vacated because his due process rights were violated under <u>Brady v. Maryland</u> and its progeny;
>
> III. Petitioner's convictions and death sentence should be vacated because his statements to police were obtained in violation of his Sixth Amendment right to counsel and should have been suppressed;
>
> IV. Petitioner's convictions and death sentence should be vacated because they were obtained with unscientific, unreliable and misleading "expert" testimony;
>
> V. Petitioner's convictions and death sentence should be

vacated because the trial court prevented petitioner from effectively cross-examining Commonwealth witness Reigle;

VI. Petitioner's convictions and death sentence should be vacated because the Commonwealth presented evidence, from Mark Marinelli, that it knew to be unreliable;

VII. Petitioner's murder conviction and death sentence should be vacated because the guilt phase murder instructions violated due process;

VIII. Petitioner's convictions and death sentence should be vacated because he was denied his due process and Sixth Amendment rights to an impartial jury;

IX. Petitioner's convictions and death sentence should be vacated because his waiver of his right to testify was invalid?

X. Petitioner's death sentence should be vacated because trial counsel failed to reasonably investigate, develop and present mitigating evidence;

XI. Petitioner's death sentence should be vacated because the jury failed to give effect to mitigating evidence;

XII. Petitioner's death sentence should be vacated because of unconstitutional jury instructions and prosecutorial argument regarding torture;

XIII. Petitioner's death sentence should be vacated because the penalty phase instructions shifted the burden of persuasion from the Commonwealth to Petitioner and violated the presumption of life;

XIV. Petitioners' death sentence should be vacated because the sentencing jury was never instructed that, if sentenced to life, he would be eligible for parole;

XV. Petitioners' death sentence should be vacated because the jury instructions' definition of mitigating circumstances prevented the jury from giving full effect to mitigation;

XVI. Petitioner's death sentence should be vacated because the Pennsylvania Supreme Court failed to provide meaningful proportionality review;

XVII. Petitioner's convictions and death sentence should be vacated because of ineffective assistance of counsel at trial and on direct appeal; and

XVIII. Petitioner's convictions and death sentence should be vacated because of the cumulative prejudicial effect of the errors described in this petition.

(Doc. 9, Amended Petition). On May 12, 2008, a response to the petition was filed, and supporting exhibits were filed on May 19, 2008, June 6, 2008 and December 17, 2009). (See Docs. 26, 27, 30, 42). Marinelli filed his reply brief on July 31, 2008. (Doc. 36).

By Memorandum and Order dated November 26, 2012, this Court issued a Memorandum and Order denying the petition for writ of habeas corpus, and denying a certificate of appealability on all claims, except for Claim I. (Docs. 46, 47).

On December 21, 2012, Marinelli filed a Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e), seeking reconsideration as to the denial of a COA relating to Claims 2, 3, 6, 7, 8, 10, 11, 12, and 14. (Doc. 48).

On April 25, 2013, Marinelli filed a second PCRA petition in the Northumberland County Court of Common Pleas. See Commonwealth v. Marinelli, CR-94-451, Criminal Docket at 8. The petition is currently pending. Id.

On May 14, 2013, Marinelli filed a Supplement to Motion to Alter or Amend Judgement, Pursuant to Federal Rule of Civil Procedure 59(e), Stay of Federal Proceedings Pending Exhaustion of State Remedies and Consolidated Brief (Doc. 56), in which Marinelli supplements his pending Motion to Alter and Amend Judgment with previously unavailable evidence. Id. Specifically, Marinelli proffers the newly obtained affidavit of Nathan Reigle as proof that the Commonwealth violated Brady v. Maryland, 373 U.S. 83 (1963), and its progeny by failing to reveal a promise to Reigle that the Commonwealth would forego prosecuting him and by failing to disclose that it solicited and coached Reigle to

give false and misleading testimony at trial, as averred in Claim II[2] of his Habeas

Corpus Petition. (Doc. 56). Further, Petitioner proffers Mr. Reigle's affidavit as

proof that he was indeed previously unavailable, having asserted a Fifth

Amendment privilege and maintained his silence until just recently in the face of

threats of prosecution by the Commonwealth. Petitioner requests reconsideration

and a hearing on Claim II, or in the alternative, that these habeas proceedings be

held in abeyance so that Petitioner can return to state court to allow the state courts

the opportunity to address this newly available evidence supporting relief from his

conviction and death sentence. Id.

## III.    **Discussion**

AEDPA, as codified at 28 U.S.C. § 2254(e)(2), limits the ability of a federal

district court to hold an evidentiary hearing in habeas review. See Williams v.

Taylor, 529 U.S. 420 (2000); Palmer v. Hendricks, 592 F.3d 386, 392-94 (3d

---

[2]Petitioner contends in Claim II that the prosecution violated Brady by withholding: (1) mitigating information regarding Petitioner's traumatic life history; (2) exculpatory/mitigating information regarding Petitioner's intoxication at the time of the offense; (3) impeachment information regarding Commonwealth witness Mark Marinelli; and (4) impeachment information regarding Commonwealth witness Nathan Reigle. (Doc. 18, Memorandum of Law at p. 23-29).

Cir.2010); Lewis v. Horn, 581 F.3d 92, 104-05, 109 n. 11, 117 (2009); Goldblum

v. Klem, 510 F.3d 204, 220-21 (3d Cir.2007), cert. denied sub nom. Goldblum v.

Kerested, 555 U.S. 850 (2008); Taylor v. Horn, 504 F.3d 416, 435-37 (3d

Cir.2007), cert. denied sub nom. Taylor v. Beard,556 U.S. 846 (2008); Rolan v.

Vaughn, 445 F.3d 671, 680 (3d Cir.2006); Thomas v. Varner, 428 F.3d 491,

497-99 (3d Cir.2005). Under AEDPA, if a state prisoner "has developed the

factual basis of his claims in the state court, he is not entitled to an evidentiary

hearing" in federal court. Goldblum, 510 F.3d at 220 (citing 28 U.S.C. §

2254(e)(2)); Rolan, 445 F.3d at 680-81 (district court erred in conducting an

evidentiary hearing on a claim when the state court had conducted a hearing on the

same issue); Taylor, 504 F.3d at 435-37 (petitioner not entitled to evidentiary

hearing in federal court when he could have presented his alleged new evidence to

the PCRA Court).

The first inquiry is "whether the factual basis was indeed developed in state

court, a question susceptible, in the normal course, of a simple yes or no answer."

Thomas, 428 F.3d at 498 (quoting Williams v. Taylor, 529 U.S. 420, 431 (2000)).

If the answer is no, then a court must determine if this is due to Petitioner's failure.

"In its customary and preferred sense, 'fail' connotes some omission, fault, or

negligence on the part of the person who has failed to do something," and "a

person is not at fault when his diligent efforts to perform an act are thwarted, for

example, by the conduct of another or by happenstance." Williams, 529 U.S. at

431–32. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the

factual basis of a claim is not established unless there is lack of diligence, or some

greater fault, attributable to the prisoner or the prisoner's counsel." Id. at 432.

"Diligence will require in the usual case that the prisoner, at a minimum, seek an

evidentiary hearing in state court in the manner prescribed by state law." Id. at

437.

In this case, Marinelli was diligent in his efforts to develop his Brady claim

in state court. In his PCRA petition, Marinelli alleged that the Commonwealth

violated Brady v. Maryland, 373 U.S. 83 (1963), and its progeny by failing to

disclose exculpatory evidence, including substantial impeachment evidence

regarding key Commonwealth witness Nathan Reigle. Petitioner attempted to

prove the above-described proffer about Reigle by calling Reigle as a witness at

Petitioner's PCRA hearing, and he states that the following occurred:

> Before Reigle could be questioned, however, the Commonwealth
> asked the [PCRA] court to advise him "[o]f his rights since he has
> testified previously under oath." NT-PC-1 at 323-24. After a short

debate, in Reigle's presence, the Commonwealth withdrew its
objection, but ominously stated that it would wait and see if Reigle
"[c]rosses into incrimination." Id. at 324. The Commonwealth's
threat was clear – if Reigle testified contrary to his trial testimony, he
would be charged with perjury.

Reigle stated "I wish to plead the Fifth Amendment," and refused to
answer questions. NT-PC-1 at 325-28. The PCRA court stated:

> If ... he feels that any testimony he gives is going to
> incriminate himself in any way, including but not limited
> to perjury as to prior statements, I think he is entitled to
> invoke this privilege. So unless he chooses to answer,
> I'm not going to force him to in anyway. (NT-PC-1 at
> 326)

Petition ¶¶ 142-43 (paragraph numbers omitted). The
Commonwealth declined to grant immunity to Reigle, and he did not
testify.

(Doc. 18, Memorandum of Law at 33-34). Thus, Petitioner concludes that he was

prevented, through no fault of his own, from presenting Reigle's testimony at the

PCRA hearing. Id.

In rejecting this claim, the Pennsylvania Supreme Court found the

following:

> Marinelli's first claim, that the prosecution failed to disclose the
> terms of a deal between the Commonwealth and Reigle, is really an
> assertion that "the Commonwealth failed to disclose impeachment
> evidence regarding ... Reigle." Marinelli cites to the PCRA testimony
> of Robert Sacavage (now Judge Sacavage), the prosecutor assigned to

23

his case, who testified that he "shaked" Reigle. Judge Sacavage explained that "[w]hen you're talking to individuals that are mostly strangers to you, you want to make sure you're getting accurate information; and you warn them, certainly, that you expect them to tell the truth." (PCRA N.T., 1/24/00-1/27/00, at 358-360). As the PCRA court properly determined, this does not demonstrate the existence of a deal between Reigle and the Commonwealth and does not constitute evidence that might have affected the outcome of the trial. Accordingly, Marinelli has failed to prove a Brady violation in this regard. Moreover, we substantially addressed this contention on direct appeal, where we noted the following:

> Nathan Reigle's juvenile record was disclosed by the trial court to counsel for both defendants, including the fact that Reigle was currently on juvenile probation. Further, Reigle's juvenile probationary status and possible bias or agreements with the prosecution were brought out at trial by the Commonwealth. There is thus no merit to [Marinelli's] contention that he was denied an opportunity to confront the prosecution's witness.

(Doc. 27-9, App. R, Marinelli-2 at 20-21).

Based on the above presentation to the state courts, the Court finds that the factual predicate for Marinelli's Claim II existed and was raised by Petitioner. To the extent that Marinelli now has new evidence to support the claim, such does not negate the existence of the claim or Petitioner's diligence in attempting to raise the claim. For that reason, he is not entitled to a hearing in this Court on that claim.

Marinelli states that his present Supplemental filing is based upon newly

discovered evidence regarding Nathan Reigle's testimony which was not

previously available. (Doc. 56 at 15). Based upon this evidence, Petitioner

initiated a pro se action pursuant to Pennsylvania's Post Conviction Relief Act

(PCRA), 42 Pa. C.S.A. § 9541, et seq. on April 25, 2013.[3] See Commonwealth v.

Marinelli, CR-94-451, Criminal Docket at 8. His action is currently pending

review in state court. Id.

Although Petitioner did not file a formal motion to stay, he does seek a stay

of proceedings in his Supplement to his motion to alter and amend judgment. (See

Doc. 56). The stay and abeyance procedure holds a federal habeas petition

pending exhaustion of state remedies by the petitioner. Rhines v. Weber, 544 U.S.

269 (2005). While granting a stay and abeyance is an available procedure, it is not

a preferred course of action. Id. Because a "stay and abeyance" procedure, if used

too frequently, can undermine the policies favoring prompt and orderly resolution

---

[3]The Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons.Stat. §
9541, et seq., provides the framework for state collateral review of criminal
convictions. Like its federal counterpart, the PCRA contains a time bar, see 42 Pa.
Cons.Stat. § 9545(b)(1), and an exception to this time bar for newly-discovered
evidence. See id. § 9545(b)(1)(ii).

of state habeas petitions, the Supreme Court held that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Rhines, 544 U.S. at 277. However, the Supreme Court also did not limit the authority to grant a stay to specific scenarios; rather, the district court must determine whether the petitioner "satisfied the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d Cir.2009).

In the instant case, the introduction of the newly discovered evidence supporting Petitioner's Brady claim, has not been presented to the state court. Marinelli presents colorable evidence that his claim under Brady v. Maryland, 373 U.S. 83 (1963), is based on new information which was previously undiscoverable, and the PCRA contains an exception allowing out-of-time petitions based on newly-discovered evidence. See supra, note 3. Specifically, Marinelli's newly-discovered evidence consists of an affidavit, dated March 7, 2013, which appears to be the recantation of a prosecution witness from his trial. He claims that the attestations in the affidavit provide the foundation for a federal constitutional claim under Brady, and that this information could not have,

through due diligence, been discovered before March 7, 2013. Although "[c]ourts have historically viewed recantation testimony with great suspicion." <u>Landano v. Rafferty</u>, 856 F.2d 569, 572 (3d Cir.1988) (citing <u>United States v. Kearney</u>, 682 F.2d 214, 219 (D.C. Cir.1982)), the purpose of this inquiry is not to evaluate the credibility or merits of petitioner's new evidence. The affidavit is facially valid and signed under pains of perjury, and the information therein, if true, may undermine the Marinelli's conviction and sentence. This is sufficient to render Petitioner's claims "potentially meritorious."

Finally, as noted above, rather than engaging in delay, Marinelli diligently pursued state relief upon discovery of this new information. As such, this Court finds that Marinelli's claim meets the requirements announced in <u>Rhines</u> for applying the "stay-and-abeyance" procedure, and his request to place his petition in abeyance will be granted in an order accompanying this opinion.

Along with his request for a stay of the above captioned action, Marinelli also requests the appointment of counsel pursuant 18 U.S.C. § 3599, which states, in pertinent part:

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent

stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

Section § 3599(e). Thus, section 3599 authorizes the Court's appointment to continue throughout the available post-conviction proceedings and in "appropriate motions and procedures."

In Harbison v. Bell, 556 U.S. 180, 182–83 (2009), the Court granted certiorari to address "whether § 3599(e)'s reference to 'proceedings for executive or other clemency as may be available to the defendant' encompasses state clemency proceedings." In finding that § 3599(e) authorizes federally appointed counsel to represent clients in such proceedings, the Court considered the text of § 3599(e) and noted that "[i]t is the sequential organization of the statute and the term 'subsequent' that circumscribe counsel's representation, not a strict division between federal and state proceedings." Id. at 188. The Court also indicated that the Government's concern that § 3599(e) as interpreted by the Court that federally funded counsel would need to represent petitioners in any state habeas proceeding

occurring after appointment of counsel to be unfounded because state habeas is not a stage "subsequent" to federal habeas. See id. at 189. Thus, even though "state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute." Id. at 190. Nevertheless, in light of § 3599(e)'s provision that counsel may represent clients in "other appropriate motions and procedures," the Court noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." Id. at 190 n. 7, 129 S.Ct. 1481.

Because representation by current counsel during the pursuit of Petitioner's newly discovered evidence claim will ensure, not only that Marinelli is represented, but that he is represented by counsel who already are intimately familiar with the facts of the case, and who have had an ongoing relationship with Petitioner, thus avoiding delay that would be necessary for new counsel to become familiar with the facts and claims herein, the Court will appoint current counsel to represent Marinelli pursuant 18 U.S.C. § 3599.

An appropriate Order accompanies this Memorandum Opinion.

Dated: September 16, 2013

United States District Judge